IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| EGYPT MUSLISMAH LOVE, | : | CIVIL ACTION NO. |
| a/k/a Geneva Ronda Stone, | : | 1:14-CV-01974-WSD-JSA |
| Douglas Cnty. ID # 13101353, | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | |
| SAMUEL F. PATTERSON, | : | PRISONER CIVIL ACTION |
| Chief of Police, | : | 42 U.S.C. § 1983 |
| DUANE L. HIERS, JR., | : | |
| Investigator, | : | |
| EVELYN WYNN-DIXION, | : | |
| Mayor, City of Riverdale, | : | |
| Defendants. | : | |

**MAGISTRATE JUDGE'S FINAL REPORT AND RECOMMENDATION**

Plaintiff, an inmate at the Douglas County Jail, seeks relief under 42 U.S.C. § 1983. Her complaint (Doc. 1), application to proceed *in forma pauperis* ("IFP") (Doc. 2), and first amended complaint (Doc. 3) were entered on the docket of this case on June 25, 2014; she received leave to proceed IFP (Doc. 4) on June 26; and her request for an increase in her "monetary settlement relief" (Doc. 7) was docketed on September 4. This matter is now ready for an initial screening.[1]

**I.      The Legal Framework**

---

[1] The Court takes judicial notice that the Mayor of the City of Riverdale, Georgia, spells her last name Wynn-Dixon. The Clerk is **DIRECTED** to adjust the style of this case accordingly.

To state a claim for relief under 42 U.S.C. § 1983, a plaintiff must allege that a person acting under color of state law deprived him of a right, privilege, or immunity secured by the Constitution or laws of the United States. *Richardson v. Johnson*, 598 F.3d 734, 737 (11th Cir. 2010). Title 28 U.S.C. § 1915A requires a federal court to conduct an initial screening of a prisoner complaint seeking redress from a governmental entity, or from an officer or employee of such an entity, to determine whether the complaint (1) is frivolous, malicious, or fails to state a claim upon which relief may be granted, or (2) seeks monetary relief from a defendant who is immune from such relief. A complaint is frivolous when it "has little or no chance of success"—for example, when it appears "from the face of the complaint that the factual allegations are clearly baseless[,] the legal theories are indisputably meritless," or "the defendant's absolute immunity justifies dismissal before service of process." *Carroll v. Gross*, 984 F.2d 392, 393 (11th Cir. 1993) (internal quotations omitted). A complaint must "contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotations omitted). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice," and "only a complaint that states a plausible claim for relief survives." *Id.* at 678-79. To be plausible, the

2

complaint must contain "well-pleaded facts" that "permit the court to infer more than the mere possibility of misconduct." *Id.* at 679.

## II.   <u>Plaintiff's Pleadings</u>

In her original complaint, Plaintiff presents the following allegations. On May 23, 2013 she witnessed an "incident that occurred on private property." (Doc. 1 at 3). Investigator Hiers of the City of Riverdale Police Department came to the scene and "ran [her] tag and ID [and] everything came back good." (*Id.*). But without warning, Hiers tackled her and pushed his knee into her back, forcing her chest and stomach into the steps where she had been sitting while handcuffing her so tightly that the circulation was cut off in her hands. (*Id.*). Hiers then searched her property without a warrant and seized her vehicle, purse, cash, credit cards, cell phone, laptop and other valuables, as well as identification documents belonging to her and her family. (*Id.*). Hiers took her to his vehicle and told her to "get in." Despite her complaints of pain throughout her body, he twice slammed her head against the vehicle door. (*Id.* at 3-4). He later left her in his hot vehicle with no ventilation for almost an hour and then drove so recklessly to the Clayton County Jail that her body hit the door. (*Id.* at 4).

Plaintiff alleges further that Hiers has issued "countless" warrants for her arrest during 2010-13 on charges that were false and have been dismissed. (*Id.* at 5). On

3

May 23, 2013, he charged her with manufacturing an identification, criminal damage to government property, simple battery, obstruction of an officer and forgery. (*Id.*). He has changed her date of birth and social security number "many times" and has added numerous aliases and a caution alert to her criminal history, warning that she is a "mentally ill person." (*Id.*). Plaintiff alleges that Riverdale Chief of Police Patterson "is involved by not investigating [her] complaints, and allowing these events to occur," and "because they had a custom, policy, or practice of deliberate indifference to such behavior." (*Id.*). She asserts that Investigator Hiers is a final policymaker who has established "the widespread practice [of] the city police." (*Id.*).

In her amended complaint, Plaintiff alleges that she first contacted Evelyn Wynn-Dixon, the Mayor of Riverdale, to inform her of the arrest warrant that Hiers had issued in 2010. (Doc. 3 at 2). Mayor Dixon told Plaintiff to turn herself in, but when Plaintiff was released the Mayor apologized for Hiers; "stated that there is a custom, policy and practice of deliberate indifference to such behavior"; and told Plaintiff that if she "need[ed] to express any more concerns to please contact her [the Mayor] or her head investigator." (*Id.*). The chief investigator contacted Plaintiff immediately and told her of an ongoing investigation into Hiers's activities, but each time Plaintiff spoke with him thereafter in 2010-13, "there was no end result." (*Id.*).

4

Plaintiff seeks $17 million in damages.  (Doc. 1 at 4; *but see* Doc. 7 (increasing her "monetary settlement relief" request to $41 million)).  She also asks that the caution message and all alias names be removed from her criminal history report; the report be updated to reflect her correct date of birth and social security number; her property be returned to her; and the Court issue an order allowing her to change her social security number so that Hiers will not be able to harass her again.  (*Id.*).

### III.  Discussion

#### A.  Investigator Hiers:  False Arrest And Illegal Search and Seizure

"A warrantless arrest made without probable cause violates the Fourth Amendment and is actionable under § 1983, but an arrest made with probable cause constitutes an absolute bar to a § 1983 action for false arrest." *Vickers v. Georgia*, 567 Fed. Appx. 744, 2014 U.S. App. LEXIS 9682, at *4 (11th Cir. 2014) (citing *Ortega v. Christian*, 85 F.3d 1521, 1525 (11th Cir. 1996)). "An officer has probable cause for an arrest when the arrest is 'objectively reasonable based on the totality of the circumstances.' " *Id.* (quoting *Wood v. Kesler*, 323 F.3d 872, 878 (11th Cir. 2003)). Here, because only Plaintiff's version of events is before the Court, and the Court is obliged to accept her well-pleaded facts as true, *see Iqbal*, 556 U.S. at 678, the undersigned concludes that Plaintiff has at least *stated* a plausible claim that she was

5

arrested without probable cause based on her allegations that the charges brought against her by Hiers were later dismissed. Her false arrest and related search and seizure claims against Hiers are sufficiently well-pleaded to allow them to proceed.

### B.     Investigator Hiers:  Excessive Force

"The Fourth Amendment encompasses the right to be free from the use of excessive force during an arrest." *Crosby v. Monroe County*, 394 F.3d 1328, 1333 (11th Cir. 2004) (noting that "the 'reasonableness' inquiry in an excessive force case is an objective one: the question is whether the officer's actions are 'objectively reasonable' in light of the facts and circumstances confronting him, without regard to his underlying intent or motivation").

> [T]he right to make an arrest or investigatory stop necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect it. As a result, the application of *de minimis* force, without more, will not support a claim for excessive force in violation of the Fourth Amendment. *See, e.g., Rodriguez v. Farrell*, 280 F.3d 1341, 1351 (11th Cir. 2002) (in the course of arrest, officer handcuffed plaintiff in a manner that caused him injury and pain); *Nolin v. Isbell*, 207 F.3d 1253, 1255, 1258 & n.4 (11th Cir. 2000) (during the course of arrest, officer grabbed plaintiff and shoved him against a van, kneed him in the back and pushed his head against the van, searched his groin area, and then handcuffed him).

*Saunders v. Duke*, 766 F.3d 1262, 1269 (11th Cir. 2014) (citation and internal quotations omitted). But the *Saunders* court reversed the district court's dismissal of

the plaintiff's excessive force claim against the agents who arrested him because he alleged that although "he was not resisting or posing a threat to anyone, one of the agents . . . 'slammed' his head into the pavement with 'extreme force.'  If these allegations are true, and we must assume that they are at this stage of the case, that force was unnecessary, disproportionate, and constitutionally excessive." *Id.* at 1268, 1271.

Based on Plaintiff's allegation that Hiers slammed her head into the door of his vehicle after he had handcuffed and subdued her, Plaintiff has stated a plausible claim that Hiers's use of force against her was excessive.  *See id.* at 1268; *Iqbal*, 556 U.S. at 678-79.  Her excessive force claim against Investigator Hiers should be allowed to proceed at least beyond this initial pleading stage.

### C. **Police Chief Patterson and Mayor Wynn-Dixon**

Plaintiff has not stated a plausible claim for relief against either City of Riverdale Police Chief Patterson or City of Riverdale Mayor Wynn-Dixon.

#### 1. **Individual-Capacity Liability**

To state a claim for relief against a supervisor, such as a Police Chief or Mayor, in his or her individual capacity, a plaintiff must allege that either (1) "the supervisor personally participate[d] in the alleged unconstitutional conduct" or (2) "there is a

7

causal connection between the actions of [the] supervising official and the alleged constitutional deprivation." *Cottone v. Jenne*, 326 F.3d 1352, 1360 (11th Cir. 2003). Plaintiff does not claim that Chief Patterson or Mayor Wynn-Dixon participated directly in Hiers's allegedly unconstitutional conduct, and neither Defendant may be held liable simply because he or she is a supervisor and one of his or her subordinates committed a constitutional violation. *See Marsh v. Butler County*, 268 F.3d 1014, 1035 (11th Cir. 2001) (*en banc*) ("Supervisory officials cannot be held liable [under § 1983] for the acts of employees solely on the basis of respondeat superior." (internal quotations omitted)).

Plaintiff can show a causal connection between the actions or inaction of Chief Patterson and Mayor Wynn-Dixon, on the one hand, and the alleged violations of her constitutional rights, on the other, by showing that either (1) one or both were on notice of a history of widespread abuse and failed to take corrective action; or (2) they had a custom or policy that resulted in the alleged violations; or (3) the facts support "an inference that [they] directed the subordinates to act unlawfully or knew that the subordinates would act unlawfully and failed to stop them from doing so." *Cottone*, 326 F.3d at 1360. But "[t]he standard by which a supervisor is held liable in [his or her] individual capacity for the actions of a subordinate is extremely rigorous." *Id.*

8

And " '[t]he deprivations that constitute widespread abuse sufficient to notify the supervising official must be obvious, flagrant, rampant, and of continued duration, rather than isolated occurrences.' " *Hayes v. Sec'y*, 563 Fed. Appx. 701, 703-04 (11th Cir. 2014) (quoting *Brown v. Crawford*, 906 F.2d 667, 671 (11th Cir. 1990)).

### a. Chief Patterson

Plaintiff alleges that Chief Patterson "is involved by not investigating [her] complaints, and allowing these events to occur. . . . [and] because they had a custom, policy, or practice of deliberate indifference to such behavior." (Doc. 1 at 5). Plaintiff does not identify who "they" are, and her contention that Chief Patterson had adopted a policy or practice to ignore alleged violations of her constitutional rights is based entirely on speculation and thus is insufficient to state a claim against the Chief. To be plausible, Plaintiff's complaint must contain "well-pleaded facts" that "permit the court to infer more than the mere possibility of misconduct." *See Iqbal*, 556 U.S. at 679. Plaintiff's complaint does not do so.

### b. Mayor Wynn-Dixon

Plaintiff alleges that the Mayor "became involved when she refused to investigate [Plaintiff's] complaints," and when Plaintiff was released after Hiers first arrested her in 2010, the Mayor apologized to Plaintiff for advising her to turn herself

in, "stated that there is a custom, policy and practice of deliberate indifference to such behavior," and then referred Plaintiff to her chief investigator, who "called Plaintiff as soon as [she] was done speaking with the mayor." (Doc. 3 at 2). If the Mayor acknowledged, as Plaintiff asserts, an official custom or practice of ignoring behavior such as Hiers's, it is apparent that she did not authorize, condone or ratify that custom or practice, tacitly or otherwise. Instead, she initiated an investigation into it by referring Plaintiff to her chief investigator to follow up on Plaintiff's complaint about Hiers's treatment of her. Plaintiff thus has not alleged facts showing any action or failure to act by Mayor Wynn-Dixon to support a *plausible* claim against the Mayor in her individual capacity. *See Iqbal*, 556 U.S. at 679.

### 2. Official-Capacity Liability

Plaintiff also has not stated a plausible claim for relief against any of the three Defendants in their official capacities. Such official-capacity claims are actually claims against the City of Riverdale. *See Brown v. Neumann*, 188 F. 3d 1289, 1290 (11th Cir. 1999) (citing *Kentucky v. Graham*, 473 U.S. 159 (1985), for "the proposition that a suit against a governmental official in his official capacity is deemed a suit against the entity that he represents"). But a city's "liability under § 1983 may not be based on the doctrine of *respondeat superior*." *Grech v. Clayton County*, 335 F.3d

10

1326, 1329 (11th Cir. 2003) (*en banc*) (citing *City of Canton v. Harris*, 489 U.S. 378, 385 (1989); *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978)). A city "is liable under section 1983 only for acts for which [it] is actually responsible," and it "is liable only when [its] official policy causes a constitutional violation." *Id.* (internal quotations omitted).

"[T]o impose § 1983 liability on a municipality, a plaintiff must show: (1) that his constitutional rights were violated; (2) that the municipality had a custom or policy that constituted deliberate indifference to that constitutional right; and (3) that the policy or custom caused the violation." *McDowell v. Brown*, 392 F. 3d 1283, 1289 (11th Cir. 2004). "A policy is a decision that is officially adopted by the municipality, or created by an official of such rank that he or she could be said to be acting on behalf of the municipality." *Sewell v. Town of Lake Hamilton*, 117 F. 3d 488, 489 (11th Cir. 1997); *see Demmons v. Fulton County*, No. 1:09-CV-2312, 2010 U.S. Dist. LEXIS 90829, at *46 n.43 (N.D. Ga. Aug. 2, 2010) ("Plaintiff may demonstrate that a policy or custom exists by identifying: (1) an officially promulgated policy; (2) an unofficial custom or practice shown through repeated acts of a final policymaker, *Grech*, 335 F.3d at 1329; or (3) an action by a decisionmaker who possesses *final authority* to establish *municipal policy* with respect to the action ordered." (citing *Quinn v. Monroe*

11

*County*, 330 F.3d 1320, 1325 (11th Cir. 2003) (emphasis added in *Quinn*) (internal quotation omitted) (citation altered)), *adopted by* 2010 U.S. Dist. LEXIS 88380 (N.D. Ga. Aug. 25, 2010).  A custom may expose a city to § 1983 liability if "the relevant practice is so widespread as to have the force of law."  *Bd. of County Comm'rs v. Brown*, 520 U. S. 397, 404 (1997); *see Cuesta v. Sch. Bd.*, 285 F.3d 962, 966 (11th Cir. 2002) (a city may be liable for "a widespread practice that, although not authorized by written law or express municipal policy, is so permanent and well settled as to constitute a custom and usage with the force of law" (internal quotations omitted)).

"[A] municipality's failure to correct the constitutionally offensive actions of its employees can rise to the level of a custom or policy if the municipality tacitly authorizes these actions or displays deliberate indifference towards the misconduct." *Griffin v. City of Opa-Locka*, 261 F.3d 1295, 1308 (11th Cir. 2001) (internal quotations omitted).  A plaintiff may attempt to show that a municipality's failure to provide adequate training is a custom or policy for purposes of § 1983 liability, but can do so only if the failure amounts to deliberate indifference.  *City of Canton v. Harris*, 489 U. S. 378, 388 (1989); *see also Williams v. DeKalb County*, 327 Fed. Appx. 156, 160 (11th Cir. 2009) ("A police department's failure to train or supervise its officers can constitute a policy sufficient to trigger governmental liability but only in limited

12

circumstances, such as when that failure amounts to deliberate indifference to the rights of persons with whom the police come into contact." (internal quotations omitted)). "To establish deliberate indifference, 'a plaintiff must present some evidence that the [city] knew of a need to train and/or supervise in a particular area and the [city] made a deliberate choice not to take any action.' " *Id.* (quoting *Gold v. City of Miami*, 151 F.3d 1346, 1350 (11th Cir. 1998)).

Plaintiff's claims against the City of Riverdale rest on two assertions. The first is that an unspecified "they" had a custom, policy or practice of deliberate indifference to her constitutional rights, as acknowledged by the Mayor. (Doc. 1 at 5; Doc. 3 at 2). For the reasons stated above with respect to the Chief's and Mayor's potential individual-capacity liability, this assertion does not state a plausible claim for relief against either Defendant in his or her official capacity either. As noted above, the Mayor instructed her chief investigator to look into Hiers's activities, which he did, although obviously not thoroughly enough to satisfy Plaintiff. (Doc. 3 at 2). Plaintiff thus has failed to allege a custom or practice, tacitly authorizing Hiers's activities, that was "so widespread as to have the force of law." *See Brown*, 520 U. S. at 404; *see also City of Opa-Locka*, 261 F.3d at 1308. In fact, her allegations very nearly establish the opposite—not only did the City of Riverdale not tolerate Hiers's alleged activities by

13

way of a custom or practice having the force of law, but there was an apparent intolerance for such activities, as demonstrated by the City's investigation into those activities. Plaintiff's contention that "they" had a custom, policy or practice of deliberate indifference to the violation of her constitutional rights simply does not state a plausible claim for relief. *See Iqbal*, 556 U.S. at 678-79.

Plaintiff's second assertion is that "Investigator Hiers possesses the final Authority when he establish[ed] a disregard to the widespread practice belonging to the city policy, and a[n] oath to serve and protect" (Doc. 1 at 5). Aside from its general incoherence, this assertion fails to state a plausible claim for relief because it is implausible that a field investigator for the City of Riverdale Police Department, whom Plaintiff acknowledges has been under review for his actions, has final policymaking authority for the City. *See Morro v. City of Birmingham*, 117 F.3d 508, 514 (11th Cir. 1997) (citing an Eleventh Circuit case "recognizing that a municipal officer has final policymaking authority when his decisions are not subject to review" (internal quotations omitted)). Plaintiff's complaint thus does not "contain sufficient factual matter, accepted as true, to state a claim to relief [against the City of Riverdale] that is plausible on its face." *See Iqbal*, 556 U.S. at 678.

**IV.   <u>Conclusion</u>**

**IT IS THEREFORE RECOMMENDED** that Plaintiff's claims against Investigator Hiers be **ALLOWED TO PROCEED** and that Riverdale Chief of Police Patterson, Riverdale Mayor Wynn-Dixon and Plaintiff's claims against them be **DISMISSED** from this action.

Should the District Court adopt these recommendations, **IT IS FURTHER RECOMMENDED** that this case be **CLOSED** and consolidated with *Love v. Palmer, Smith, Hiers & Hill*, No. 1:14-cv-1351 (N.D. Ga. opened May 6, 2014), and that Plaintiff's relevant pleadings in this action (Docs. 1, 3 and 7) be docketed in that earlier-filed case.[2]

The Clerk is **DIRECTED** to withdraw the reference to the Magistrate Judge.

---

[2]In that earlier-filed case, Plaintiff also has sued Hiers for false arrest. The Report and Recommendation now pending before the District Court in that case recommends, among other things, that Plaintiff's false arrest claim be allowed to proceed against Hiers. *See Love*, No. 1:14-cv-1351, Doc. 10.

The Clerk has docketed a motion to amend in this action (Doc. 8) and in *Love*, No. 1:14-cv-1351, Doc. 12, which concern Plaintiff's pending actions complaining about her treatment at the Douglas County Jail. The Clerk is therefore **DIRECTED** to remove these motions to amend from Plaintiff's Clayton County cases, Nos. 1:14-cv-1351 and 1:14-cv-1974, and to docket them in her Douglas County cases, Nos. 1:14-cv-2859 and 1:14-cv-2865.

**SO RECOMMENDED** this 30th day of October, 2014.

_____
JUSTIN S. ANAND
UNITED STATES MAGISTRATE JUDGE

AO 72A
(Rev.8/82)